# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RHONDA JACKSON,**

    **Plaintiff,**

   v.                                                                Case No. 19-CV-290

**ANDREW M. SAUL,**
**Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Rhonda Jackson seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits and for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below, the Commissioner's decision is affirmed.

## BACKGROUND

In September 2015, Jackson applied for disability insurance benefits and supplemental security income, alleging disability beginning on May 1, 2015, due to depression, degenerative disc disease in the lower back, bipolar disorder, asthma, arthritis/osteoarthritis, and high blood pressure. (Tr. 192–204, 232.) After the SSA denied the applications initially and upon reconsideration (Tr. 68–114), Jackson requested a hearing before an Administrative Law Judge ("ALJ"). The SSA granted Jackson's request and held an administrative hearing on October 13, 2017. (Tr. 39–67.) Jackson testified at the hearing, as did Karen Snyder, a vocational expert.

The ALJ followed the five-step sequential evaluation process, and on February 28, 2018, he issued a written decision unfavorable to Jackson. The ALJ found that Jackson had not engaged in substantial gainful activity since her alleged onset date. (Tr. 18.) The ALJ also found that Jackson had the following severe impairments: asthma, degenerative disc disease, obesity, affective disorder, personality disorder, and anxiety disorder. (Tr. 19.) The ALJ further found that Jackson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 19–21.)

The ALJ found that Jackson had the residual functional capacity ("RFC") to perform light work, with the following limitations: must be allowed to sit or stand alternatively at will; must be allowed off task up to 15% of the workday, due to a combination of the sit/stand option and mental impairments, in addition to regularly scheduled breaks; occasional stooping and crouching; must avoid moderate exposure to environmental irritants such as fumes, odors, dusts, and gases; limited to understanding, carrying out, and remembering no more than simple instructions; limited to performing simple, routine tasks; limited to working in an environment free of fast-paced production requirements; limited to performing work involving only simple, work-related decisions and work involving few, if any, workplace changes; limited to employment in a low stress job, defined as having only occasional decision making and occasional changes in the work setting; and able to have only occasional interaction with the public, coworkers, and supervisors. (Tr. 21–31.)

The ALJ also found that Jackson was unable to perform her past relevant work as a home attendant or an inspector. (Tr. 31.) Nevertheless, considering Jackson's age, education, work experience, and RFC, the ALJ found that there existed jobs in significant numbers that

Jackson could perform. (Tr. 31–32.) The ALJ therefore concluded that Jackson was not disabled from her alleged onset date through the date of the decision. (Tr. 33.)

The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Jackson's request for review. (Tr. 1–5.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the SSA's rulings and regulations. Failure to do so requires reversal, unless the error is harmless. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in

evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## 2.    *Application to this Case*

Jackson argues that the ALJ (1) failed to explain how he determined that Jackson would be off task for only 15% of the workday, and (2) erred in relying on the VE's testimony that Jackson could still work despite being off task for that long.

### 2.1    *ALJ's Off-task Limitation*

In assessing Jackson's RFC, the ALJ determined, among other things, that Jackson "must be allowed to sit or stand alternatively at will" and "must be allowed off task up to 15% of the workday, due to a combination of the sit/stand option and mental impairments, in addition to regularly scheduled breaks." (Tr. 21.) Jackson argues that the ALJ failed to explain how he arrived at the 15% figure, asserting that "it is conceivable that Ms. Jackson would be off-task more than 15% of the day" given the sit/stand option and her moderate difficulty in concentrating, persisting, and maintaining pace. (Pl.'s Br. at 22–23, Docket # 10; Pl.'s Reply at 4–5, Docket # 20.) The Commissioner argues that substantial evidence supports the ALJ's off-task limitation and that Jackson has not cited any evidence supporting her being off task more than 15% of the workday. (Def.'s Mem. at 10–16, Docket # 19.)

Although the ALJ failed to explain how he determined that Jackson would be off task only 15% of the workday, this error does not require remand because Jackson has not shown any resulting harm. *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (remanding

4

where ALJ failed to lay a foundation for 10% off-task limitation *and* unrebutted testimony established that plaintiff "was taking unscheduled breaks (sometimes for 20 minutes) three to five times during his five-hour shifts"). No doctor opined that Jackson would be off task a particular percentage of the workday, and Jackson did not testify with specificity on her need to take breaks or general off-task behavior. Rather, the ALJ included the off-task limitation in his RFC assessment to account for the sit/stand option and Jackson's mental impairments. (*See* Tr. 21, 24.) Jackson contends that it is "conceivable" she would be off task more than 15% of the workday, but she cites no evidence to support this speculation. In her reply brief, Jackson points to evidence from three medical providers—Nosheen Hasan, M.D.[1]; Cari Keuhmichel, P.T.; Mikaela Mendez-Smith, M.S., L.P.C.—that arguably could result in a greater off-task limitation. (Pl.'s Reply at 5.) However, the ALJ assigned little weight to each of those provider's opinions (*see* Tr. 27–28, 30), and Jackson has not attempted to argue that the ALJ erred in evaluating the medical opinion evidence. Moreover, unlike in other cases, the VE here never testified at what percentage off task full-time work would be precluded. The ALJ's lack of explanation regarding the off-task limitation, therefore, was harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (discussing harmless error).

### 2.2  ALJ's Reliance on VE's Testimony

At the administrative hearing, the VE testified that a hypothetical person of Jackson's age, education, work experience, and RFC—including being off task 15% of the workday, in addition to regularly scheduled breaks— could perform the requirements of unskilled, light jobs such as a sorter, a machine tender, and a routine clerk (Tr. 61–63.) Jackson, who was represented by counsel at the hearing, did not object to the VE's testimony and declined to

---

[1] Incorrectly cited by Jackson as "Dr. Nevin."

ask the VE any questions. (*See* Tr. 59–67.) The ALJ relied on the VE's testimony at step five in the sequential evaluation process when he concluded that Jackson was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 32.)

Jackson argues that the ALJ erred in relying on the VE's testimony because the VE failed to explain the basis for concluding that a person could still work despite being off task for 15% of the workday. (Pl.'s Br. at 20–22; Pl.'s Reply at 1–4.) Jackson further argues that the VE's testimony appears arbitrary, as VEs in other cases have testified that being off task more than 10% of the day would preclude all work. The Commissioner argues that Jackson forfeited this argument by not objecting to the VE's testimony and that, in any event, the ALJ properly relied on the VE's testimony. (Def.'s Mem. at 5–10.)

"Under SSR 00-4p, an ALJ has an 'affirmative responsibility' to ask whether a vocational expert's evidence 'conflicts with information provided in the DOT[2]' before relying on that evidence to support a determination of nondisability." *Overman v. Astrue*, 546 F.3d 456, 462–63 (7th Cir. 2008) (quoting SSR 00-4p at 4) (citing *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)). "If evidence from a VE 'appears to conflict with the DOT,' SSR 00-4p requires further inquiry: an ALJ must obtain 'a reasonable explanation for the apparent conflict.' *Overman*, 546 F.3d at 463 (quoting SSR 00-4p at 5). "A conflict is apparent if it is 'so obvious . . . that the ALJ should have picked up on [it] without any assistance.'" *Weatherbee*, 649 F.3d at 570 (quoting *Overman*, 546 F.3d at 463).

---

[2] The *Dictionary of Occupational Titles* ("DOT") is published by the Department of Labor; it "provides standardized occupational information, including the most typical characteristics of jobs as they exist throughout the American economy." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

The ALJ did not commit reversible error in relying on the VE's testimony at step five. Jackson maintains that the ALJ "failed to inquire into the VE's testimony regarding the 15% off task limitation, even though it is not covered by the DOT." (Pl.'s Br. at 20.) But if the DOT does not address time off task, then the VE's testimony here "supplemented the DOT and did not conflict with it." *Collins v. Berryhill*, 743 F. App'x 21, 26 (7th Cir. 2018) (citing *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016)). Because there was no apparent conflict between the VE's testimony and the DOT, Jackson forfeited her challenge to the VE's testimony by not objecting to it at the administrative hearing. *Id.*; *see also Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (finding that plaintiff forfeited argument concerning VE's testimony by failing to object to it during the hearing); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) (same); *Beth v. Astrue*, 494 F. Supp. 2d 979, 1007–08 (E.D. Wis. 2007) (same). The ALJ, therefore, did not err in relying on the VE's unchallenged testimony.

Assuming, for the sake of argument, that an apparent conflict did exist regarding the off-task limitation, Jackson has not demonstrated that the ALJ failed to fulfill his obligation under SSR 00-4p. At the outset, the ALJ confirmed that the VE understood she needed to identify any conflicts between her opinions and the DOT and the basis for her opinions. (Tr. 59–60.) After the VE provided her substantive testimony, the ALJ asked about certain opinions—including the sit/stand option—that were not addressed in the DOT. (Tr. 66.) The VE indicated that those opinions were "based on [her] experience in job placement and observations [she had] done over 14 years." (*Id.*) Thus, the ALJ obtained a reasonable explanation for the basis of the VE's opinions.

Jackson reads the testimony hyperliterally, contending that the sit/stand option and the 15% off-task limitation are two separate allowances and that the ALJ and the VE

7

addressed the former but not the latter. (Pl.'s Reply at 1–2.) The language used by the ALJ and the VE was imprecise. However, it is clear from reading the testimony as a whole that the ALJ and the VE referred to the sit/stand option as shorthand for the off-task limitation. At the administrative hearing, the ALJ presented the VE with a series of hypothetical questions about the type and number of jobs that would be available to a person with Jackson's age, education, and work experience. The first hypothetical involved a restriction to light work with additional limitations. (*See* Tr. 61.) For the second hypothetical, the ALJ added that the person

> would need a sit/stand option allowing this person to sit or stand alternatively at will provided that the person is not off task more than 15 percent of the work period.
> Likewise, the individual would be allowed to be off task, I guess, in general, including the sit/stand option 15 percent of the day in addition to regularly scheduled breaks.

(Tr. 62.) The VE asked for clarification: "So are we talking about the off task with the sit/stand up to 15 percent of the workday, and then an additional 15 percent?" (*Id.*) The ALJ responded, "No. That's one 15 percent that includes the sit/stand option and the overall off task." (*Id.*) The VE testified that the additional restriction would erode the job numbers she provided in response to the first hypothetical, but thousands of jobs would still be available. (Tr. 63.) Although the VE indicated that she changed her answer "for the sit/stand" (*id.*), the ALJ's combining of the two components into one restriction suggests that the VE was also addressing the off-task limitation, as any sit/stand option would need to allow the individual to be off task up to 15% of the workday. The same is true with respect to the VE's subsequent testimony about the "sit/stand option" being based on her experience. (*See* Tr. 66.)[3]

---

[3] Indeed, the ultimate RFC reflected that the off-task limitation was "due to a combination of the sit/stand option and mental impairments." (Tr. 21.)

## CONCLUSION

Jackson argues that the ALJ erred in determining that she could still work despite being off task 15% of the workday, in addition to regularly scheduled breaks. I find that the ALJ did not err and that the decision is supported by substantial evidence. Therefore, the Commissioner's decision is affirmed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of February, 2020.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge